**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                         :
TERA GROUP, INC., et al.,                :          17-cv-04302 (RJS)
                                         :
                          Plaintiffs,    :
                                         :
          v.                             :
                                         :
CITIGROUP, INC., et al.,                 :
                                         :
                          Defendants.    :
                                         :
-----------------------------------------------------------x
```

**STIPULATION AND [PROPOSED] ORDER REGARDING THE**
**PRODUCTION OF DISCOVERY MATERIAL**

**1.     PURPOSES AND LIMITATIONS**

Discovery requests and subpoenas served in the Action may call for the production of electronically stored information.  Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulated Order Regarding the Production of Discovery Material ("Order").

**2.     DEFINITIONS**

2.1     <u>Action</u>:  *Tera Group, Inc., et al. v. Citigroup, Inc., et al.*, 17-cv-04302 (RJS).

2.2     <u>Document</u>:  defined to be synonymous in meaning and equal in scope to the usage of this term in Local Rule 26.3(c)(2) and Federal Rule of Civil Procedure 34(a)(1)(A).

2.3     <u>Email</u>:  electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, or Lotus Notes.

2.4     <u>ESI</u>:  an abbreviation of "electronically stored information" and shall have the same meaning and scope as it has in Federal Rule of Civil Procedure 34(a)(1)(A).

2.5     <u>Extracted Text</u>:  text extracted from a Native Format file and includes at least all header, footer, Document body information, and any hidden text, if available.

2.6     <u>Instant Messages</u>:  real-time communications sent via chat client or SMS, including but not limited to Bloomberg Chat, Google Talk, WhatsApp, Yahoo! Messenger, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Audium, Trillian, or any proprietary instant messaging system.

2.7     <u>Load File</u>:  an electronic file that is used to import all required production information into a Document database, including, if available, Document images, Extracted Text or OCR text, Native Format files where required by this Order, and Metadata, as well as information indicating Document breaks, and Document relationships such as those between an Email or Instant Message and its attachments and a Document and information related to embedded content.

2.8     <u>Metadata</u>:  structured information about ESI that is created by the file system or application, embedded in the Document or Email and sometimes modified through ordinary business use.  Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

2.9     <u>Native Format</u>:  the format of ESI in the application in which such ESI was originally created.

2.10    <u>OCR</u>:  the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

2.11    <u>Party</u>:  any party to the Action, including all of its officers, directors, and employees.

2.12    <u>Producing Party</u>:  any Party or third-party in the Action that produces Documents.

2.13    Receiving Party:  a Party in the Action to whom Documents are produced.

2.14    Responsive Document:  any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure or Court order.

2.15    Tagged Image File Format:  or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

## 3.    SCOPE

The procedures and protocols set forth in this Order shall govern the production format of paper Documents and ESI in this Action, to the extent available.  This Order does not govern any procedures or criteria used to define or limit the scope of production such as identification and preservation of potentially responsive data types and systems, or custodian selection.  Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Action.  Nothing in this Order establishes any agreement as to any search or review protocol, including which sources shall be searched for Responsive Documents or ESI including Email or Instant Messages, or how a Responsive Document is to be identified.

The production specifications in this Order apply to Documents that are produced in the first instance in this Action.  To the extent any Party is required or agrees to re-produce Documents in this Action that originally were produced in other cases or government investigations, such Documents may be produced in the same format in which they originally were produced regardless of whether that format complies with the specifications provided in Exhibit A to this Order.  The Parties expressly reserve their right to claw back any re-produced documents if such documents contain Privileged Material or if such documents are nonresponsive, non-privileged Discovery Material (*see* Dkt. No. 158, Stipulated Protective Order at Sections 12.1 and 12.2).  The Parties

will meet and confer in good faith regarding the extent to which re-produced Documents are not reasonably usable in the format produced, and reserve their rights in respect of the same.  For the avoidance of doubt, nothing in this Order obligates a Party to re-produce previously-produced Documents or ESI.

4.     **PRODUCTION FORMAT**

    4.1     <u>Format Guidelines</u>:  The Parties shall, to the extent reasonably and technically possible, produce paper Documents and ESI according to the specifications provided in Exhibit A.

    4.2     <u>De-Duplication</u>:  A Party is only required to produce a single copy of a Responsive Document.  Each Party may remove exact duplicate Documents (*i.e.*, identical copies of the same Document), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents.  If a Party chooses to remove exact duplicate Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5/SHA-1 hashing method and shall identify the custodians of de-duplicated Documents.  Moreover, (a) de-duplication shall be performed only at the Document family level [1] so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa, although each family member shall be hashed separately

---

[1]  Unless otherwise agreed upon by the Parties, a family can only be removed through de-duplication if each and every member of the de-duplication candidate family has identical MD5/SHA-1 hashcodes to the corresponding members of another family.  For example, if there is a two-member family with a parent and an attachment, the MD5 hashcodes of the parent must be identical and the MD5 hashcodes of the attachments must also be identical.  If a Party de-duplicates globally, the Party shall, if feasible, identify the de-duplication priority order at the request of any other Party.  To the extent any Party wishes to de-duplicate Emails in such a way as to eliminate earlier or incomplete chains of Email, the Parties shall confer in good faith about that request.

for purposes of populating the "HashValue" field in Exhibit A; (b) attachments to Emails, Instant Messages, or other Documents shall not be disassociated from the parent Email, Instant Message, or Document even if they are exact duplicates of another Document in the production; and (c) paper Documents shall not be eliminated as duplicates of responsive ESI.  ESI that is not an exact duplicate according to the method specified in Exhibit A may not be removed.  The Parties shall make reasonable efforts to reach agreement on any culling criteria to be used.

4.3     Encryption:  The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and if produced in Native Format, the decrypted Document is produced.  To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Order, the Parties have no duty to identify the prior encrypted status of such Documents.  To the extent such Documents are not successfully processed despite use of reasonable efforts, including reasonable efforts to obtain passwords, to the extent a family member of such a Document is a Responsive Document, a placeholder TIFF image may be produced in place of each such Document indicating that security protection could not be removed.  Upon request from the Receiving Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

Documents to Be Produced Natively:  Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database

files, video, audio files, animation files, and PowerPoint and other presentation files shall be produced in Native Format, if available.  If a Document to be produced in Native Format contains privileged information or information protected by privacy laws, the Document will be produced by producing the Document in TIFF format with redactions, to the extent reasonably and technically possible.  To the extent Documents that fall under this Section contain privileged information or information protected by privacy laws and cannot be redacted or produced in TIFF format, such Documents will be logged on a privilege log.  If appropriate, the Parties agree to meet and confer to discuss the possibility of redacting Documents that fall under this Section in Native Format.  The production load files shall contain a link to the produced Native Format files as specified in the "Native Link" Metadata field described in Exhibit A.  Each electronic file produced in Native Format shall be assigned a unique Document Number, as set forth in Section 4.10, and the database record for that file shall include a single page TIFF image branded with this unique Document Number in the lower right corner of the image as a Bates number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page.  To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Stipulated Protective Order filed with the Court governing Responsive Documents produced in this Action (Dkt. No. 158) ("Protective Order") must appear on the associated TIFF placeholder in no less than 10-point font.  Files produced in Native Format shall be given file names identical to the Document Number, followed by

the file extension and include the confidentiality designation after the file number, *e.g.*, PartyNameTeraCDS00000000_CONFIDENTIAL.xls or PartyNameTeraCDS00000000_HIGHLYCONFIDENTIAL.xls.   For each file produced in Native Format, the Producing Party shall also indicate its native status in the Native File Metadata field described in Exhibit A.

4.4   <u>Embedded Files</u>:  Responsive, non-logo embedded files to Responsive Documents shall be produced as separate Documents.   A Producing Party shall either (i) provide the Document Number of the source file from which the embedded file is extracted as metadata associated with the embedded file, as described in Exhibit A, (ii) identify embedded files as Document family members of the source file from which the embedded file is extracted, or (iii) produce a placeholder TIFF image in place of each such embedded file that could not be extracted.  Upon request by the Producing Party, the Parties shall meet and confer in good faith regarding whether certain non-substantive embedded files may be excluded from production.

4.5   <u>Databases</u>:  Non-privileged raw data kept in enterprise databases (such as Oracle, SQL, or DB2 databases) that are maintained in the normal course of business will be produced in an electronic format.  To the extent such databases exist, raw data from those types of databases will be produced in database or delimited text file format, as database reports, or, where necessary, the Parties will discuss appropriate procedures and methods of production. This Order does not obligate the Producing Party to create reports in a format not already available in any structured data source, but in the course of meeting and conferring over relevant requests for production,

the parties will discuss the exchange of data maps, data dictionaries, or sample reports to enable the Receiving Party to understand the data.

4.6     <u>Production of Additional Documents in Native Format</u>:  Each Party reserves the right to request production of ESI in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A, and, upon a showing of reasonable need, such requests will not be unreasonably denied.  The Parties shall not make categorical or wholesale requests for production of ESI in Native Format and such requests are deemed invalid.  If the Parties are unable to agree as to the production of the requested Documents in Native Format, the Parties may submit the matter to the Court.

4.7     <u>Attachments</u>:  The parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any completely non-responsive logo attachments or attachments that must be withheld or redacted on the basis of privilege, immunity, or privacy laws.  Any attachment withheld pursuant to this Section shall be replaced with a single page Bates-stamped TIFF image slip-sheet reflecting the Party's confidentiality designation and basis for withholding the Document (*i.e.*, non-responsive, privilege, attorney work product, etc.).

4.8     <u>Unitization</u>:  In scanning paper Documents, each page of paper should be output to a single page TIFF file.  Distinct, logical Document breaks should be defined as such in a standard load file as described in Exhibit A.  In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be

scanned separately, but any Document or family relationship among the scanned Documents in the compilation should be reflected in the data Load File at the appropriate standard fields.  Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document.  The Parties shall make reasonable efforts to unitize the Documents correctly.

4.9     <u>Document Numbers and Confidentiality Designations for TIFF Images</u>:  Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") containing at least eight (8) digits electronically "burned" onto the image in no less than 10-point font.  Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Document Number shall be burned on the lower right hand corner of the Document.  Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to the Protective Order will appear on the lower left hand side of each page of a Document produced, in no less than 10-point font.  The Document Number for each Document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "PartyNameTeraCDS00000000").

4.10    <u>Metadata Fields and Processing</u>:  Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted from a Document shall be produced for that Document.  The Parties are not obligated to populate manually any of the fields in Exhibit A if such fields cannot be extracted from a Document and its context in the source data, with the exception of the following, if

available:   (a)  BegBates,  (b)  EndBates,  (c)  BegAttach,  (d)  EndAttach,
(e) Custodian/Duplicate Custodian, (f) Redacted (Y/N), (g) Confidentiality, and (h)
HashValue.  Metadata shall be provided in a Concordance-format delimited file
with a .DAT file extension, Unicode (UTF-8) encoding, and ASCII 020 and 254
delimiters for column break and text qualifier.  The first line shall be the header
with field names, and each subsequent line shall contain the fielded data for each
Document.  Nothing herein shall require a Producing Party to create or produce
Metadata that does not exist or is not reasonably or technically accessible.

4.11    Production Media:  The Producing Party shall produce Document images, Native
Format files, Load Files (including Extracted Text / OCR text) and Metadata on
hard  drives,  CDs,  DVDs,  secure  FTP,  or  other  mutually  agreeable  media
("Production Media").  Each piece of Production Media shall include a unique
identifying label corresponding to the identity of the Producing Party, the date of
the production of Documents on the Production Media and the Document Number
ranges of the Documents in that production (*e.g.*, "Plfs' Production April 1, 2020,
PartyNameTeraCDS00000123-PartyNameTeraCDS00000456").   To  the  extent
that the Production Media includes any confidential information protected under
any protective order, the label on such Production Media shall indicate that the
Production Media includes information so designated as required under the terms
of the protective order.  Production Media labels shall include text referencing the
case name and number.  Further, any replacement Production Media shall cross-
reference the original Production Media, clearly identify that it is a replacement,
and  cross-reference  the  Document  Number  range  that  is  being  replaced.   All

Production Media that is capable of write protection should be write-protected before production.  All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production.

4.12   Third-Party Software:  To the extent that documents produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

## 5.    PROCESSING SPECIFICATIONS

5.1   The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the Native Format file.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:  Where Documents are not otherwise produced natively, all TIFF images shall display tracked changes, comments and other rich data as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible.  Producing Parties shall make reasonable efforts to process all ESI with a single time zone.  The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

## 6.    CONFIDENTIALITY

Documents shall be subject to the terms of the Protective Order as well as Federal Rule of Civil Procedure 26(c).

7.  **PRIVILEGE LOG**

7.1   The Parties agree to negotiate a reasonable time within which to exchange privilege logs containing the information called for by Local Rule 26.2 and Federal Rule of Civil Procedure 26(b)(5), except as otherwise provided in Paragraphs 7.2-7.4 below.

7.2   The Parties agree that they need not exchange the text of litigation hold/retention instructions issued in this Action.

7.3   The Parties agree that the following categories of privileged and otherwise Responsive Documents and ESI need not be included in a privilege log:  (a) work product of counsel and Parties concerning the Action, (b) any internal communications within a law firm, and (c) any communications regarding litigation holds or preservation, collection, or review of Documents in the Action or any litigation.

7.4   If a Party requires further information to evaluate a claim of privilege, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information.  Within thirty (30) days of such a request, the Producing Party must either (i) provide the requested information or (ii) challenge the request.  If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.  If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

8.  **AMENDMENT OF ORDER**

Nothing herein shall preclude any Party from seeking in writing to amend this Order for good cause shown, provided, however, that no Party may seek relief from the Court concerning

compliance with the Order until it has met and conferred in good faith with any Parties involved in the dispute.

**9.     MISCELLANEOUS**

9.1     <u>Technology-Assisted Review</u>: To reduce the burden and cost associated with the review and production of email and other ESI, after conferring in good faith with the other side, a Party may elect to leverage technology-assisted culling or review processes, such as the use of keyword search terms, email thread suppression, and/or predictive coding.

9.2     <u>Right to Assert Other Objections</u>:  By stipulating to the entry of this Order, no Producing Party waives any right it otherwise might have to object to disclosing or producing any information or item on any ground, including confidentiality. Similarly, no Producing Party waives any right to object on any ground to the authenticity, admissibility, or use in evidence of any of the material covered by this Order.

9.3     <u>Retention Obligations</u>:  Nothing in this Order alters a Party's legal obligation to retain Documents and data.

**SO ORDERED.**

 **Dated:   _____, 2019**

                                    _____
                                        **Hon. Richard J. Sullivan**
                                        **United States Circuit Judge**
                                        **Sitting by Designation**

13

James E. Brandt
Lawrence E. Buterman
Jessica D. Rostoker
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
james.brandt@lw.com
lawrence.buterman@lw.com
jessica.rostoker@lw.com

*Attorneys for Defendants Barclays PLC;*
*Barclays Bank PLC; and Barclays Capital Inc.*

Marshall H. Fishman
Meghan K. Spillane
Christine V. Sama
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8851
Facsimile: (646) 558-4063
mfishman@goodwinlaw.com
mspillane@goodwinlaw.com
csama@goodwinlaw.com

*Attorneys for Defendants BNP Paribas, S.A.*
*and BNP Paribas Securities Corp.*

*Roberto Gonzalez / BMS*

Brad S. Karp
Julia Tarver-Mason Wood
William A. Clareman
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
bkarp@paulweiss.com
jwood@paulweiss.com
wclareman@paulweiss.com

Kenneth A. Gallo
Roberto J. Gonzalez
Ravi Romel Sharma
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street NW
Washington, DC 20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
kgallo@paulweiss.com
rgonzalez@paulweiss.com
rsharma@paulweiss.com

*Attorneys for Defendants Citigroup Inc.;
Citibank, N.A.; Citigroup Global Markets Inc.;
and Citigroup Global Markets Limited*

*Jason M. Hall/rc*

David G. Januszewski
Herbert S. Washer
Elai Katz
Jason M. Hall
Peter J. Linken
Tara H. Curtin
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY 10005
Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420
djanuszewski@cahill.com
hwasher@cahill.com
ekatz@cahill.com
jhall@cahill.com
plinken@cahill.com
tcurtin@cahill.com

*Attorneys for Defendants Credit Suisse AG;*
*Credit Suisse Group AG; Credit Suisse*
*Securities (USA) LLC; and Credit Suisse*
*International*

_____

Robert D. Wick
Andrew D. Lazerow
John S. Playforth
Katharine Mitchell-Tombras
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291
rwick@cov.com
alazerow@cov.com
jplayforth@cov.com
kmitchelltombras@cov.com

*Attorneys for Defendants JPMorgan Chase &
Co.; JPMorgan Chase Bank, N.A.; J.P. Morgan
Securities LLC; and J.P. Morgan Securities
PLC*

David C. Bohan
Peter G. Wilson
Elliott M. Bacon
Kristin Coveney
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061
david.bohan@kattenlaw.com
peter.wilson@kattenlaw.com
elliott.bacon@kattenlaw.com
kristin.coveney@kattenlaw.com

Daniel G. Swanson (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
dswanson@gibsondunn.com

*Attorneys for Defendant UBS Securities LLC*

_Vincent Briganti_

_____

Geoffrey M. Horn
Peter D. St. Phillip, Jr.
Vincent Briganti
Christian Levis
LOWEY DANNENBERG P.C.
44 South Broadway, Suite 1100
White Plains, New York 10601
Phone:  (914) 997-0500
ghorn@lowey.com
pstphillip@lowey.com
vbriganti@lowey.com
clevis@lowey.com

*Attorneys for Plaintiffs Tera Group, Inc.; Tera Advanced Technologies, LLC; and TeraExchange, LLC*

# EXHIBIT A

**1.      PRODUCTION LOAD FILES**

There will be two Load/Unitization files accompanying all productions of ESI.

- The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension, that contains the agreed-upon Metadata fields in UTF-8 encoding.
- The second will be a cross-reference file that contains the corresponding image information [IDX] identifying Document breaks.  The acceptable formats for the cross-reference files are .log and .opt.

**2.      IMAGES**

- Produce Documents in Single Page Group IV TIFF.
- Image Resolution of at least 300 DPI.
- If any Party deems the quality of the Document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the Document as a JPEG file or as a color image in TIFF or PDF format. The Parties shall not make categorical or wholesale requests for color images and such requests are deemed invalid.
- File Naming Convention:  Match Bates Number of the page.
- Insert placeholder image for files produced in Native Format (*see* Section 4.4).
- Original Document orientation or corrected orientation shall be retained.

**3.      SPECIAL FILE TYPE INSTRUCTIONS**

- Certain file types shall be produced in Native Format, as specified in Section 4.4.
- If redactions are required, see production requirements specified in Section 4.4.

**4.      FULL TEXT EXTRACTION/OCR**

- Where available, produce full extracted text for all file types (Redacted text will not be produced).  Redacted Documents should be re-OCRed and only the unredacted text should be produced.
- Produce OCR text output for any paper Document.
- Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF, etc.) where Extracted Text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).
- Production format:  Single text file for each Document, not one text file per page.
- File Naming Convention:  Match Beg Bates Number.
- Text encoding:  Encoding of the text files shall be Unicode (UTF-8).

5.    **ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

- BegBates:  Beginning Bates Number.
- EndBates:  Ending Bates Number.
- BegAttach:  Beginning Bates number of the first Document in a Document family range.  Documents that are part of Document families, *i.e.*, containing parents and attachments should receive a value.
- EndAttach:  Ending Bates number of the last Document in attachment range in a Document family range.  Documents that are part of Document families, *i.e.*, containing parents or attachments, should receive a value.
- Custodian:    Name of the Custodian of the Document produced (LastName_FirstName format).
- Duplicate Custodians:  Names of all custodians who had a copy of a Document that was removed through the de-duplication process (if applicable)(LastName_FirstName format).
- FileName:  Filename of the original source ESI as stored by the custodian.
- NativeLink:  Path and filename to produced Native Format file (*see* Section 4.4).
- EmailSubject:  Subject line extracted from an Email message.
- Title:  Title field extracted from the metadata of a non-Email Document.
- Author:  Author field extracted from the metadata of a non-Email Document. The Parties acknowledge that the Author field may not actually be the Author of the document.
- From:  From field extracted from an Email message.
- To:  To or Recipient field extracted from an Email message.
- Cc:  CC or Carbon Copy field extracted from an Email message.
- BCC:  BCC or Blind Carbon Copy field extracted from an Email message.
- DateSent:  Sent date of an Email message (mm/dd/yyyy format).
- TimeSent:  Sent time of an Email message (hh:mm:ss format).
- ParentDate:  The date of the parent email should be applied to the parent email and all of the email attachments to the extent reasonably practicable.
- DateLastModified:  Last modification date (mm/dd/yyyy).
- TimeLastModified:  Last modification time (hh:mm:ss format).
- DateCreated:  Date document was created. The Parties acknowledge that the DateCreated field may not actually be the DateCreated due to the ease of change to that field and the technical definition of the field (*e.g.*, the created date reflects the date when the file was created in that particular location on the computer or on the other storage device location).
- TimeCreated:  Time document was created. The Parties acknowledge that the TimeCreated field may not actually be the TimeCreated due to the ease of change to that field and the technical definition of the field (*e.g.*, the created time reflects the time when the file was created in that particular location on the computer or on the other storage device location).
- HashValue:  MD5 or SHA-1 hash value.File Extension:  File extension of Document (.msg, .doc, .xls, etc.).
- File Size:  File size in kilobytes (KB).

A-2

- Redacted:  Identifies a document containing redactions and shall be populated with Y/N.
- ExtractedText:  File path to Extracted Text/OCR File.
- Confidentiality:  "Confidential" or "Highly Confidential," if a Document has been so designated under the Protective Order; otherwise, blank.
- Page Count:  Total number of pages in the document.
- Attach Count:  Number of attached files.
- Message-ID:  The Outlook Message ID assigned by the Outlook mail server (if applicable).
- Reference Chain or Conversation Index:  The Outlook message "Reference Chain" or "Conversation Index" (if applicable).
- Embedded Source:  The Document Number of the source file from which the embedded file was extracted (if applicable).

The Parties agree that with respect to the above-referenced metadata fields:

1. There is no obligation for a Producing Party to rename metadata fields as long as all fields above are accounted for (if applicable).

2. With respect to the date and time metadata fields above, the Parties reserve the right to produce such metadata as a single field (*e.g.*, DateSent = DateSent + TimeSent) since the metadata may already be exported and logged as such.

3. With respect to the Custodian and Duplicate Custodians metadata fields above, the Parties reserve the right to produce such metadata as a single field (*e.g.*, Custodian = Custodian + Duplicate Custodians) since the metadata may already be exported and logged as such.

## 6.   DE-DUPLICATION

- De-duplication method:  Parties may make reasonable efforts to de-duplicate stand-alone Documents or entire Document families globally using MD5 or SHA-1 Hash value matching.
- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.
- Logos extracted from emails and files do not need to be produced as separate documents or attachments.